THE STATE ex rel. LEON HURWITZ, Appellant, v. EMMETT P. NORTH et al.

In Banc, July 31, 1924.

1. **PHYSICIAN: Complaint to Revoke License: Filed by Prosecuting Attorney: Surplusage.** A complaint charging that a physician has been guilty of unprofessional and dishonorable conduct and pray-

ing that his license be revoked may be filed by any citizen, and if it purports to have been filed by a prosecuting attorney it may be considered as having been filed in his capacity as a citizen, and the title of his office and the oath following his name may be considered as descriptive of the complainant and eliminated as mere surplusage.

2. ———: Compulsory Process: Power of Board of Health. The statute (Sec. 7336, R. S. 1919) does not empower the State Board of Health to issue process for witnesses, books or papers, and therefore the board does not abuse its discretion in refusing, upon the application of a physician against whom charges of dishonorable conduct have been filed, to issue subpoenas for witnesses and documents to be used at the hearing.

3. ———: ———: Due Process. Due process of law requires a hearing, after due notice, but the proceedings need not be according to the course of the common law, nor does it always mean a court hearing. The statute (Sec. 7336, R. S. 1919) gives to the State Board of Health power to revoke the license of a physician for certain specified acts of dishonorable conduct, after due notice and a hearing upon evidence; and while it does not empower the board to issue subpoenas for witnesses and to compel the production of documents, it does authorize the taking of depositions by a notary public, to be used as evidence at the hearing, and it provides, upon an order of revocation, for a review by the circuit court, by writ of *certiorari*, of the proceedings before the board, and for an appeal from a judgment of the circuit court, and it does. not therefore violate the due-process clauses of the Constitution, although if such order is not judicially reviewed it deprives the physician of a valuable right.

4. ———: ———: ———: Depositions Instead of Personal Attendance. Because the statute (Sec. 7336, R. S. 1919) provides that the evidence on behalf of a physician against whom charges of dishonorable conduct have been filed with the State Board of Health, be submitted by deposition, rather than by the personal attendance of his witnesses before the board, it does not do violence to the due-process clauses of the Constitution. Said statute permits him to testify personally at the hearing, and gives him compulsory process for the taking of the depositions of other witnesses, to be read in evidence at the hearing, and therefore ample means of making a full defense to the charges.

5. **CONTINUANCE:** Pending Criminal Charge. The fact that a criminal charge against the physician is pending is no ground for continuing a hearing to revoke his license pending before the State Board of Health.

---

Headnote 1:   Physicians and Surgeons, 30 Cyc. 1557 (1926 Anno); Continuances, 13 C. J. sec. 28.   Headnotes 2 to 4:   Physicians and Surgeons:   2, 30 Cyc. 1557 (1926 Anno);   3 and 4, 30 Cyc. 1555.

Appeal from Jasper Circuit Court.—*Hon. S. W. Bates,* Judge.

AFFIRMED.

*Owen & Davis* for appellant.

(1)   The charge or complaint, under which relator was tried and convicted, was filed without authority of law, and the board was without jurisdiction, and the proceedings had thereunder are, therefore, void, because: (a)   Sec. 7336, R. S. 1919, does not authorize prosecuting attorneys to file charges to revoke licenses granted to practice medicine and surgery.   (b)   The office of prosecuting attorney is a statutory office, and the general powers and duties of such officers are defined and prescribed by Sec. 736, R. S. 1919.   (c)   A proceeding had under Section 7336, to revoke a license, is not an "action" within the meaning of Section 736.   1 Words and Phrases, 129.   (d)   Prosecuting attorneys have no power to institute suits or actions in the name of and on behalf of the State, except in matters local to the county of which they are officers.   State ex rel. v. Sullivan, 283 Mo. 546; State ex rel. v. Lamb, 237 Mo. 437; State ex rel. v. Williams, 221 Mo. 227.   (2)   The board had the power and authority to issue subpoenas and other compulsory process for witnesses and for the production of books, documents and papers; and it was error for said board to refuse the request of relator for a subpoena for Drs. Benton, Clark and Hoshaw and for a subpoena for James Jackson, commanding him to produce at the hearing of

said charges a certain prescription described in the request. State ex rel. Reid v. Walbridge, 119 Mo. 383, 394; In re Sandford, 263 Mo. 665, 692; State ex rel. v. Mason, 155 Mo. 486; Roberts v. Improvement Co., 126 Mo. 460; Bank of Seneca v. Morrison, 200 Mo. App. 177; Sutherland on Stat. Const., sec. 341; 36 Cyc. 1112. (3) If Section 7336 does not impliedly authorize and empower said board to issue subpoenas and other compulsory process for witnesses and for the production of books, documents and papers, then said section is in conflict with Section 30, Article 2, Constitution of Missouri, and the Fourteenth Amendment to the Constitution of the United States, in that it authorizes the suspension and revocation of licenses without affording the holder of the license with the necessary means of refuting and disproving the evidence offered in support of the prosecution. Wilber v. Reed, 122 N. W. 53; State v. Taylor, 145 N. W. 425; State v. Guerringer, 265 Mo. 408; Garfield v. United States, 32 App. (D. C.) 153; United States ex rel. Turner v. Fisher, 222 U. S. 204; Garfield v. Goldsby, 211 U. S. 249. (4) The right to practice medicine and surgery, under a license issued by the proper authorities, is a valuable privilege, franchise or right, if not a property right in the technical sense, and is within the protection of the due process clause of the State and Federal constitutions. State ex rel. Spriggs v. Robinson, 253 Mo. 271, 284; State ex rel. Johnson v. Clark, 232 S. W. 1031; State ex rel. Shackelford v. McElhinney, 241 Mo. 606; Ekern v. McGovern, 46 L. R. A. (N. S.) 796; State v. Schultz, 28 Pac. 643.

*Jesse W. Barrett*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondents.

(1) The complaint is sufficient and valid. Anyone may make the complaint before the State Board of Health. The fact that it was made in this case by the prosecuting attorney is immaterial. Sec. 7336, R. S. 1919; State ex rel. Johnson v. State Board of Health, 288 Mo.

663; State ex rel. v. Goodier, 195 Mo. 554; State ex rel. v. Robinson, 253 Mo. 281; State ex rel. v. State Board of Health, 266 Mo. 250. (2) The State Board of Health has no power to issue subpoenas or other compulsory process. It was not error to refuse to issue subpoena on request of relator. Sec. 7336, R. S. 1919; State ex rel. v. Goodier, 195 Mo. 559. The board is not a judicial body and does not exercise judicial function in conducting an investigation or trial for the purpose of determining whether license to practice medicine and surgery should be revoked. State ex rel. v. Goodier, 195 Mo. 563; Smith v. State Board, 117 N. W. 1118. (3) Section 7336 authorizing the State Board of Health to revoke a license to practice medicine for unprofessional and dishonorable conduct, is not unconstitutional. (a) It does not violate Section 30, Article II, Constitution of Missouri, which declares: "That no person shall be deprived of life, liberty or property without due process of law." State v. Hovorka, 110 N. W. (Minn.) 870; Reetz v. Michigan, 188 U. S. 505; St. Louis v. Mo. Pac. Ry. Co., 211 S. W. 672; State ex rel. v. Purl, 228 Mo. 22; People v. Apfelbaum, 251 Ill. 26. (b) Said act is not violative of the Fourteenth Amendment. It does not abridge the privileges and immunities of a citizen of the United States, and does not deprive relator of liberty and property without due process of law, nor does it deny the relator the equal protection of the law. Meffert v. State Board, 66 Kan. 711; Spurgeon v. Rhodes, 167 Ind. 12; Reetz v. Michigan, 188 U. S. 505. (4) The Legislature has the power under the Constitution to pass all necessary laws to guard the morals, safety and health of the people, even if such laws in some degree operate as a restraint upon recognized constitutional rights. State v. Smith, 233 Mo. 266; State v. Fisher, 52 Mo. 174; Booth v. Illinois, 184 U. S. 428; Ex parte Lucas, 160 Mo. 232. (a) The right of a state to enact such laws proceeds from its inherent power to prescribe such rules as will protect the health and safety of the people. 30 Cyc.

1547; Driscoll v. Comm., 93 Ky. 393; State v. Vandersluis, 42 Minn. 130. (b) . The only limit to the legislative power in prescribing conditions to the right to practice medicine is that they shall be reasonable. State v. Vandersluis, 42 Minn. 131. (5) Section 7336 provides a method for obtaining the testimony of such witnesses who may not attend voluntarily, namely, by deposition. Relator admits that he made no effort to secure the deposition of his absent witnesses. He was not, therefore, diligent in trying to procure his testimony. Sec. 7336, R. S. 1919; State v. Steele, 280 Mo. 71.

GRAVES, C. J.—Relator herein was a practicing licensed physician of Joplin, Missouri. Dates are not material to the real issues in the case, but it appears that on March 13, 1923, Roy Goyne, Prosecuting Attorney of Jasper County, Missouri, filed a complaint with the State Board of Health, in which it is charged:

"That the said Leon Hurwitz has been and is guilty of unprofessional and dishonorable conduct, in this, to-wit, that he, the said Leon Hurwitz, on or about the 1st day of May, 1922, in the city of Joplin, State of Missouri, unlawfully produced a criminal abortion upon one Almeda Stewart, a pregnant woman, he, the said Leon Hurwitz, being then and there not intending necessary medical or surgical treatment, and not being then and there engaged in an act necessary to preserve the life of the said Almeda Stewart, or that of an unborn child; and not then and there intending any injury other than the destruction of the pregnancy."

The complaint concluded with a prayer that the said board make inquiry as to the matters and things alleged and revoke the license of the said Leon Hurwitz.

Due notice was given Dr. Hurwitz, and a time fixed for a hearing of the charges. Hurwitz through his able counsel, first challenged, by motion to quash and dismiss the proceedings, the right of the board to proceed with the hearing for divers reasons set out in such mo-

tion. The pertinent portions of such motion will be left to the opinion. It suffices for this statement to say that the motion was denied by the board.

After the foregoing, counsel for Dr. Hurwitz filed a motion asking for the issuance of a subpoena for named witnesses, and a subpoenas *duces tecum* for other witnesses and documents. This motion was overruled by the board. These subpoenas had been declined by the secretary of the board some time prior to this written motion.

Next there was interposed an application for a continuance of the hearing owing to the absence of a named witness. The continuance was refused. Oral request was then made to continue the hearing over until after the April term of the Jasper County Circuit Court, because there was then and there pending against him a criminal charge of abortion, as charged in the complaint before the State Board of Health, and a hearing before the board at the time would be prejudicial to the relator. This request was denied. Thereupon the State Board of Health heard the evidence, having the same taken in short-hand, transcribed and preserved as required by law. Upon the conclusion of the hearing the record shows:

"Motion made by Dr. R. S. Vitt, and seconded by Dr. T. H. Wilcoxen, that the license to practice medicine and surgery in the State of Missouri of Dr. Leon Hurwitz be revoked for a period of fifteen years, and it is thereby so ordered. Motion carried. The Board then adjourned."

Dr. Hurwitz, the relator herein, then applied for and obtained from the Circuit Court of Jasper County a writ of *certiorari* directed to the State Board of Health, and said board made due return to such writ by certifying to such court a full transcript of all the proceedings in the case, including the evidence taken.

In the Circuit Court relator moved to quash the record for the following reasons:

"Now at this day comes the above named relator to quash the order of judgment of the Missouri State Board of Health revoking the license of relator to practice medicine and surgery for a term of fifteen years, and to quash the record and proceedings had before said Board of Health, and returned to this court in obedience to the writ of *certiorari* issued in the above cause, in the matter of the application of complaint of Roy Coyne, Prosecuting Attorney of Jasper County, Missouri, to revoke the license theretofore issued to relator by said Board of Health to practice medicine and surgery in the State of Missouri, for the following reasons, viz:

"1.  Because said Roy Coyne was not authorized or empowered by law to file said complaint or application, and said Board of Health was therefore without jurisdiction to hear and determine said complaint or application.

"2.  Because Section 7336, Revised Statutes 1919, under which said proceedings were had and prosecuted, is null and void, for the following reasons, viz.:

"(a)  Because said section does not authorize or empower said Missouri State Board of Health to issue subpoenas or other compulsory process for witnesses, papers and documents necessary to the defense of one being tried by said Board of Health for revocation of his license to practice medicine and surgery.

"(b)  Because said section is in conflict with Section 30 of Article 2 of the Constitution of Missouri, and with the Fourteenth Amendment to the Constitution of the United States, in that said section authorizes and empowers said Missouri State Board of Health to revoke and cancel licenses issued by it to practice medicine and surgery in this State without due process of law, in that said statute, nor any other statute, provides for the issuance of compulsory process, upon the application and at the request of the party being tried and whose license it is sought to have revoked, for the attendance of witnesses and for the production of books, papers and docu-

ments material and necessary to the defense of the person being tried.

"3.   Because said State Board of Health refused, upon the application and request of relator duly made to the secretary of said Missouri State Board of Health therefor, to issue subpoenas for Dr. A. W. Benton of Neosho, Newton County, Missouri, and for Dr. U. G. Hoshaw and Dr. A. Benson Clark, both of Joplin, Missouri, who were competent and material witnesses for relator upon the trial of the charge against relator in the application of said Roy Coyne, and because said Board of Health, upon the application and request of relator as aforesaid, refused to issue subpoena *duces tecum* for J. M. Jackson, commanding him to have and produce a certain prescription, numbered 15,760, and filled by the Jackson Drug Company, Joplin, Missouri, said Jackson being the proprietor of said drug store company.

"4.   Because said Board of Health committed error in overruling the two motions filed by relator with said Board of Health to quash and dismiss the complaint or application filed by said Roy Coyne, praying the revocation of the license issued to relator by said Board of Health to practice medicine and surgery in this State, which said motions are contained in the record certified to this court, at pages 3, 4, 5 and 6 of said record.

"5.   Because said Board of Health committed error in overruling the application of relator herein for a continuance of the hearing of the application or complaint of said Roy Coyne filed by him with said Board of Health praying the revocation of the license theretofore issued to relator by said Board of Health authorizing relator to practice medicine and surgery in this State.

"6.   Because said Board of Health erred in overruling the oral request of relator to postpone the hearing of the complaint or application of said Roy Coyne for the revocation of relator's license to practice medicine and surgery, as shown by the record certified and returned to this court, at pages 9 and 10 thereof.

"7. Because said Board of Health erred in admitting upon the trial of said complaint or application so filed by said Roy Coyne as aforesaid certain incompetent, immaterial and irrelevant evidence.

"8. Because the record so made at the hearing or trial of said application of complainant of said Roy Coyne, as aforesaid, and filed herein, shows that the complaint failed to prove that a criminal abortion had been committed upon Almeda Stewart, the person named in the complaint or application of said Coyne.

"9. Because the order or judgment of said Board of Health revoking the license of relator is wholly unsupported by the evidence, and is against the law of the case.

"10. Because the record shows upon its face that relator was not afforded a fair and impartial trial of said complaint or application, and that he was deprived of his license to practice medicine and surgery without due process of law.

"11. Because Section 7336, Revised Statutes 1919, is too vague and indefinite to be enforced and does not provide the means or machinery for revoking licenses thereunder."

We have set this motion out in full for the reason that it covers the several questions raised by the motions throughout the hearing before the State Board of Health. The motion to quash the record was overruled by the circuit court and the finding of the board sustained. From such judgment the relator appealed. This outlines the case.

I. The first attack made by relator upon the record of the State Board of Health is that the complaint purports to be filed by the prosecuting attorney, and that there is no authority in law for that officer to file such. The statute does not say by whom such complaints may be made. It contains no limitations in this regard. In State ex rel. v. Goodier, 195 Mo. l. c. 555, the charges were filed by named persons, citizens of the county. The

Complaint: Filed by Prosecuting Attorney.

same is true in State ex rel. v. State Board of Health, 266 Mo. 1. c. 250. In State ex rel. v. Robinson, 253 Mo. 1. c. 281, the complainants were three physicians, who described themselves as the "Board of Censors of Jasper County Medical Society." In State ex rel. Johnson v. State Board of Health, 288 Mo. 1. c. 663, the complaint was by H. J. Westhues, Prosecuting Attorney of Cole County, and in that respect is identical with the case at bar.

In none of these cases, however, is the question discussed. Nor are we cited to a case wherein such question is discussed. It is no doubt true that there was a criminal prosecution against Johnson, and the prosecuting officer knowing the facts preferred the charges before the State Board of Health. It does not follow from this that he was proceeding as the prosecuting attorney. He had the right of any other citizen to prefer charges, and the words "Prosecuting Attorney of Cole County" could have been eliminated as mere surplusage, or as a mere description of the person, and there would be left charges by a citizen.

So in the case at bar. It may be true that the statute fixed the duties of a prosecuting attorney and they do not cover a complaint of this kind, in his official capacity. The complaint in this case does not appear to be upon his oath of office as prosecuting attorney, except by the language following the name, which can be considered either as surplusage, or as a mere description of the person. We feel that the complaint and charges as made were (so far as this contention is concerned) sufficient to properly invoke the jurisdiction of the State Board of Health. The statute is certainly broad enough to permit any citizen to prefer the charges, and a person is not deprived of citizenship by occupying the office of prosecuting attorney.

II. The second contention of learned counsel for relator is, that the State Board of Health had the power

to issue process for witnesses and books and papers, and that such board abused its discretion, and wronged the relator in refusing to issue the subpoenas that he requested. No claim is made that there is express statutory authority to that end, but it is urged that there is an implied power within the terms of the statute. In State ex rel. v. Goodier, 195 Mo. l. c. 559 (decided in October, 1905) it was expressly ruled that there was no power to issue subpoenas possessed by the board. Many sessions of the Legislature have come and gone since that ruling, and the lawmakers have been satisfied with our construction of the then existing statute. [Sec. 8514, R. S. 1899.] This old statute authorized the board to "refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they (the board) may revoke certificates for like causes, after giving the accused an opportunity to be heard."

*Compulsory Process.*

Under that statute we ruled that no process could be issued by the board. The Legislature might have authorized the use of process, as has been done with some other bodies (other than courts), but it did not. When the statute was reduced to its present form (Sec. 7336) it would have been an easy matter to have written into it a clause authorizing compulsory process for witnesses, but the Legislature did not do so. Instead it provided for the taking and reading of depositions upon such hearings. It is unreasonable to believe that in view of our ruling in Goodier's Case, the lawmakers would have failed to make provision for compulsory process, had the intent been to grant the power to issue such process. The provision for depositions in such hearings rather exclude the idea of compulsory process for witnesses. We do not believe that the statute confers the power, even by implication, for the issuance of compulsory process, either for witnesses or for books and papers, and we so rule. It was fully within the power of the lawmakers to give authority for these hearings, and to prescribe just how the facts were to be obtained therefor.

III. The relator next urges that if we give the statute the construction just given it in the foregoing paragraph, then the statute violates the due process clauses of both the State and Federal constitutions, in Due Process. that it authorizes the taking of his license (a valuable right) without a hearing or trial before a tribunal of competent jurisdiction. The license to both a lawyer and a physician have been denominated valuable rights, of which they cannot be deprived without due process of law. [State ex rel. v. McElhinney, 241 Mo. 592; State ex rel. v. Robinson, 253 Mo. 271.]

It was no doubt in view of these rulings, that the present Section 7336, Revised Statutes 1919, was enacted. Here we have first a hearing before the State Board of Health, and then a right of review in the courts, so that no physician can now be shorn of his license without a court review if he so desires. We shall not discuss the mooted question as to whether or not the license is a privilege or a property right. It suffices to say that this court has denominated it to be a valuable right of which the possessor cannot be deprived except by due process of law. The question then is, does this Section 7336, supra, afford the physician due process of law? It has been contended that the statute did not authorize the taking of depositions. This contention Court in Banc overruled in the case of State ex rel. Farber v. Shot, 304 Mo. 523, decided at this term. That case rules that either party can take and make proof by way of depositions. That situation must be considered in determining the effectiveness of the statute as a statute giving to the parties due process of law. That case ruled that the statute permitted the taking of evidence by deposition of all witnesses who would not voluntarily appear at the hearing. The statute therefore guarantees a hearing by way of depositions, at the least. This hearing is before a board in the first instance, but a court review is provided for, and these cases have, under the

scheme of this statute, run the gamut from the State
Board of Health to this court. This case exemplifies
this fact. If the hearing fulfills the requirements of
due process, then no constitutional inhibitions have been
countered. Due process of law requires a hearing, after
due notice of such hearing has been given the party.
The proceedings need not be "according to the course
of the common law." [Hennig v. Staed, 138 Mo. l. c.
435.] The law in question provides for a hearing upon
evidence, after due notice, and for a judgment after such
hearing. Not only so, but it provides for a court review
of the whole proceeding, and this relator had such hear-
ing in the circuit court, and is now in this court upon
appeal. By "due process" we do not always mean a
court hearing. "But neither proceedings according to
common law, nor judicial proceedings in a formal court
for the trial of actions, are essential to due process."
[McGehee's Due Process of Law, p. 52; 6 R. C. L. p. 459,
sec. 454.] There must, however, be a hearing after due
notice, an opportunity to defend the right involved, be-
fore a legally constituted body for determining such
right of the citizen. The statute under consideration not
only grants all these things, but to make the matter
doubly sure, it provides for a court review.

The most commonly approved definition of due
process is that given by Webster in the course of his
argument in the Dartmouth College Case, 4 Wheat. (U.
S.) 418, wherein he said:

"By the law of the land is most clearly intended the
general law; a law, which hears before it condemns;
which proceeds upon inquiry, and renders judgment only
after trial. The meaning is, that every citizen shall hold
his life, liberty, property and immunities, under the pro-
tection of the general rules which govern society. Every-
thing which may pass under the form of an enactment
is not, therefore, to be considered the law of the land."

Our court has often quoted with approval this
statement, and announced it as a definition, applying it

to varying facts and cases. [Clark v. Mitchell, 64 Mo. 1. c. 578.; Hunt v. Searcy, 167 Mo. 1. c. 179; Barber Asphalt Pav. Co. v. Ridge, 169 Mo. 1. c. 384; Wilcox v. Phillips, 260 Mo. 1. c. 679.]

The foregoing cases discuss from different angles the doctrine of due process, both under the State and Federal constitutions, and barring the question of requiring the evidence by deposition, rather than the enforced attendance of witnesses, there is nothing in the law denying due process. The question of evidence by deposition we consider later.

IV. Does this Section 7336, Revised Statutes 1919, do violence to the due-process clause of the constitutions (State and Federal) because it provides for the evidence to be submitted by deposition, rather than by the personal attendance of witnesses? The general rule is that the State Legislature has the right to prescribe rules of evidence and rules of procedure. Such rules and laws must be reasonable, and give to the party an opportunity to make a defense, for if they preclude a full defense, they would violate due process. [McGehee on Due Process of Law, p. 80; 12 C. J. p. 1233.]

More pointed is the ruling in I. C. Railroad Co. v. Paducah Brewery Co., 157 Ky. 1. c. 364. In Kentucky there was a statute which allowed a railroad commission to hear evidence and make an award in matters of dispute, as to rates charged, and other things, between the railroads and their customers. The statute also provided that if the award made was not complied with by the railroad, it should be certified to the circuit court, when the defendant company should be brought in by notice, and the case there heard upon the evidence taken before the commission. It was urged that this latter provision as to the evidence to be used violated the due-process clauses of the constitutions. The court at page 364, said:

"Appellant further argues that Section 829 so construed violates the due-process and equal-protection clauses of the Fourteenth Amendment of the Constitution of the United States, because of the provision restricting the evidence to be introduced in the circuit court, to that produced before the commission. This was a wise provision of law, its purpose being to prevent either party from trying half its case before the commission, and the other half in the circuit court, upon testimony not offered before the commission. It merely relates to and controls the practice in such cases. There is no denial of equal protection of the law. The carrier has the right to offer its evidence; and if the commission's action is contrary to law, upon the competent evidence so offered, the courts will nullify said action.

"In State of Washington v. Fairchild, 224 U. S. 510, the Supreme Court of the United States held that a statute of the State of Washington confining the evidence upon a judicial review of an order of the State Railroad Commission to that heard by the commission, was not violative of the Fourteenth Amendment. Appellant attempts to distinguish that case from the case at bar, because the order or award there in question was not an award for reparation; but we are unable to discover any distinction in the principle involved, i. e., the right of the State to control procedure in its courts, and to require the carrier to produce its evidence to the Commission by restraining the evidence to be heard by the court to that presented to the commission.

"Appellant's contention in this respect may also be answered in the opening words of the opinion by Mr. Justice WHITE in L. & N. Railroad Co. v. Schmidt, 177 U. S. 230:

" 'It is no longer open to contention that the due-process clause of the Fourteenth Amendment does not control mere forms of procedure in state courts, or regulate the procedure therein. All its requirements are complied with, provided in the proceedings which are claimed

not to have been due process of law, the person con-
demned has had sufficient notice, and adequate oppor-
tunity has been afforded him to defend.'

"The court, therefore, holds that Section 829 em-
powers the Railroad Commission to order restitution by
a carrier to a shipper of the amount of money charged
and collected by it from the shipper in excess of a rea-
sonable rate thereafter fixed by the commission, subject
only to the Statute of Limitations; that neither, as em-
powering the commission to make such an award, nor as
to the methods of procedure therein prescribed, does
said section violate the Constitution of the State of
Kentucky; nor is it in contravention of the Constitution
of the United States."

The cases cited sustain the views of the Kentucky
court.

From a full consideration of the law, we are of the
opinion that the statute (Sec. 7336, supra) gives to
physicians ample means of making a full defense to
charges filed against them before the State Board of
Health, and is not therefore violative of due process
constitutional provisions.

V.   The foregoing dispose of the only serious ques-
tions in this case.   There was ample evidence from which
the State Board of Health could find that relator was
guilty of the charges preferred.   He was not entitled to
subpoenas, and the board could not issue such.   He could
have introduced his evidence, if any he had, by way of
deposition.   In this way he could have had compulsory
process for witnesses.   The officer taking the depositions
could compel attendance, and compel the giving of tes-
timony.   Relator made no effort to secure such evidence
(if such he could procure) in the method given him by
statute.   He testified personally, and had the benefit of
his own evidence, and could have had the benefit of
other evidence if he had taken depositions.   His con-
duct showed no diligence in getting ready for the hear-

ing, and no error was committed in refusing either application for continuance. As to the oral application for continuance, it should be added that there is no substantial reason for postponing a proceeding like this, until after the criminal prosecution is concluded. In our judgment the relator had a fair disposition of his case, and has reaped a just reward for his conduct.

The judgment of the circuit court is affirmed. All concur.