STATE of Missouri ex rel. C. Lawrence LEG-
GETT, Superintendent of the Division of
Insurance, Department of Business and
Administration, of the State of Missouri,
Relator,

v.

The Honorable Richard C. JENSEN, Judge of
the Circuit Court of Jackson County, Mis-
souri, Respondent.

No. 46983.

Supreme Court of Missouri,
En Banc.

Nov. 10, 1958.

Rehearing Denied Dec. 8, 1958.

John M. Dalton, Atty.Gen., ·Harry H. Kay, Sp. Asst. Atty. Gen., for relator, John F. Murphy, Counsel, Division of Insurance, Jefferson City, Thompson, Mitchell, Thompson & Douglas, St. Louis, of counsel.

Walter A. Raymond, Kansas City, and William H. Becker, Columbia, for respondent, John T. Barker, Floyd E. Jacobs, Kansas City, of counsel.

HYDE, Judge.

This is an original proceeding in prohibition to prevent respondent from exercising jurisdiction in the case of John T. Barker and Floyd E. Jacobs vs. C. Lawrence Leggett, Superintendent of the State Division of Insurance, in the Circuit Court of Jackson County, except to enter a final judgment dismissing same for want of jurisdiction. Barker and Jacobs are hereinafter referred to as plaintiffs.

The case against the Superintendent was commenced in Jackson County, the county of plaintiffs' residence (Secs. 536.100 and 536.110, statutory references are to RSMo and V.A.M.S. except as otherwise specified), on the theory that it was a proceeding for review of a "contested case" under the Administrative Procedure Act. Laws 1945, p. 1504. Re-

view of administrative decisions, in matters which are not within the classification of contested cases under the Act, may be had under Sec. 536.105, but the venue would be in Cole County. State ex rel. State Tax Commission v. Walsh, Mo. Sup., 315 S.W.2d 830. Therefore, relator's jurisdiction in the case against the Superintendent depends upon whether or not plaintiffs' claim for attorneys' fees is a "contested case" as defined in Sec. 536.010(3). There is no doubt whatever that plaintiffs' claim is a claim about which there is a contest, but a "contested case", to which the provisions of the statutes invoked by plaintiffs apply, has a much narrower meaning than that.

An account of the employment and services of plaintiffs will be found in Jacobs v. Leggett, Mo.Sup., 295 S.W.2d 825, 828, showing they were lawfully employed and had performed their services but could not be paid out of the funds recovered for insurance rate overcharges in the litigation (the method of payment provided in their contract) because these funds belonged to policy holders and the provisions of the insurance code provided other and exclusive methods of payment. After the decision in that case and in Barker v. Leggett, Mo.Sup., 295 S.W.2d 836, plaintiffs filed a claim for their fees with the Superintendent making among others the following requests:

"(a) Accept jurisdiction of and recognize these claims and this and preceding applications as merged herein.

"(b) Proceed under the Insurance Code and Chapter 536, R.S.Mo.,1949, on notice to hear and determine this application and preceding applications praying allowance of the claims set forth herein, and to hear evidence thereon.

"(c) Allow and approve these claims as expenses of the Insurance Department in a full and adequate reasonable amount as may be justified by the evidence which will be presented by the applicants.

"(d) Determine whether these claims and each of them (1) should be allowed as expenses of 'proceedings' against insurance companies involved in the restitution proceedings, and assessed against them ratably; or (2) are usual expenses of the Division (formerly Department) of Insurance payable out of amounts appropriated by law from the Insurance Division fund on warrants issued on such fund on vouchers approved by the Superintendent and Comptroller."

Relator's petition for prohibition states that he concluded "that he was not required by law to grant a hearing upon claimants' application and that he was without authority to allow them a fee"; and that "he therefore denied the claim." Plaintiffs' return states that "without any notice, without opportunity to be heard and without any statement of the reasons therefor, the Superintendent notified the claimants by letter that their application for hearing had been denied and their claims had been denied peremptorily".

The Insurance Code provides two methods of payment of expenses which are invoked by plaintiffs. Section 374.220 provides: "The expenses of proceedings against insurance companies * * * shall be assessed by the superintendent upon the company proceeded against * * * and shall be in the first instance paid by such company, on the order of the superintendent directly to the person or persons rendering the service." Sec. 374.260 provides that, if the expenses of the Division exceed the fees required to be collected, "the superintendent shall, annually, assess upon all insurance companies doing business in this state a sum equal to such excess;" and that "such assessments shall be made in proportion to the relative amounts of the assets of each company." The intent of these provisions, of course, is that all expense of the operation of the Division of Insurance shall be paid by the companies so that it would cost the state nothing. See Sec. 374.160. Undoubtedly, it is intended that the Superintendent shall

have discretion as to the use of these authorized methods, which plaintiffs apparently recognized by asking him to do one or the other. Of course, as suggested in Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, 1168, the Legislature could make an appropriation out of general revenue to pay plaintiffs, without action by the Superintendent.

■ The Administrative Procedure Act of 1945 covered two matters: (1) Promulgation of rules by agencies and determination of their validity (Secs. 2–5, now Secs. 536.020, 536.030, 536.040, 536.050); and (2) Procedure for trial and review of contested cases in agencies. Secs. 6–10, in 1949, 536.060, 536.070, 536.080, 536.090 for Secs. 6–9, all of which were amended in 1957; and Secs. 536.100, 536.110, 536.120, 536.130, 536.140 for Sec. 10. For amendments see Laws 1953, p. 679, Laws 1957, p. 748. The definition section (536.010, Sec. 1 of the 1945 Act) states that " 'contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties *are required by law to be determined after hearing.*" (Emphasis ours throughout.) We think this means that a "contested case" (to which the Administrative Procedure Act and its judicial review provisions apply) is a case which *must* be contested before an administrative agency because of a requirement (by constitutional provision, statute, municipal charter provision or ordinance; see Sec. 536.105, subd. 1) *for a hearing before it* of which a record must be made unless waived. § 536.060. The original act provided only for such cases; in fact, its definition of a "contested case" was one in which a hearing was "required by statute". The amending act of 1957 states in its title it is an act to repeal certain numbered sections and enact in lieu thereof others (numbers stated) "relating to administrative officers and bodies existing under the Constitution or by law, and to contested cases (*as defined*) before the same; defining terms; providing for and relating to procedure in connection with contested cases, *as defined,* * * *."
In other words, "contested case" within the meaning of the Act does not mean every case in which there may be a contest about "rights, duties or privileges" but instead one in which the contest is required by law to be decided in a hearing before an administrative agency.

This is made clearer by the fact that, at the next session of the Legislature after the adoption of the original act, another act was introduced (prepared by the Administrative Law Committee of the Missouri Bar), however not enacted until 1953 (Laws 1953, p. 678), which is now Sec. 536.105, providing for judicial review of administrative decisions which are *not required to be contested in a hearing before the agency.* State ex rel. State Tax Commission v. Walsh, supra. The report on this bill (set out in the Walsh case, Mo.Sup., 315 S.W. 2d loc. cit. 834) states:

" 'This is a companion bill to the proposed "Administrative Procedure Act of Missouri." It is supplementary to L.Mo.1945, p. 1504, and to Section 22, Article V of the Constitution. The Constitution and the 1945 act deal with judicial review of administrative decisions where evidence is taken before an agency so that there is a record to review of the same kind that exists when an appellate court reviews the judgment of a lower court.

" 'There are numerous cases, however, where agencies may act without having a hearing or making a record of evidence heard. In those cases the remedies of certiorari, mandamus, etc., are frequently inadequate, because of the inability of the court to consider the facts bearing on the merits of the agency's decision, because no record of evidence has been made for the court to review.

" 'This bill is designed to correct this situation. It provides for the making in court, in a certiorari proceeding, for example, of the same kind of record that would be made before the agency in a case reviewable under Section 22 of Article V of

the Constitution. In other words it gives the court power to hear evidence on the merits of the plaintiff's case before the agency, so that it can determine in the light of the facts as they appear to the court whether the agency's decision is proper.' "

The comment of the Committee in regard to Section 2, contained in the same report, reads as follows:

" 'This act applies only where "there is no other provision by statute, municipal charter or ordinance for judicial or administrative review." .This refers to particular review provisions so provided. Inasmuch as Section 10 of L.1945, p. 1504, applies "unless some other provision for judicial review is provided by statute," it is important that contested cases reviewable under Section 10 be expressly excluded from the operation of this act, so that there will be no possibility of conflict.' "

Sec. 536.105 is as follows: "1. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision *which is not subject to administrative review*, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, *such decision may be reviewed by suit* for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding *the court may determine the facts* relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and *may hear such evidence on such question* as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is ·unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administra-

tive officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

"2. *Nothing in this section* * * * *shall apply to contested cases reviewable pursuant to sections 536.100 to 536.140.*

"3. Nothing in this section shall be construed to impair any power to take summary action lawfully vested in any such administrative officer or body, or to limit the jurisdiction of any court or the scope of any remedy available in the absence of this section."

Both the Administrative Procedure Act of 1945 and Sec. 536.105 are based upon Sec. 22, art. V, of the Constitution, *which recognizes that there are administrative decisions made without a hearing in the agency,* and which provides: "All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, *and in cases in which a· hearing is required by law,* whether the same are supported by competent and substantial evidence upon the whole record."

We said in Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S. W.2d 647, 649, concerning this constitutional provision: "The provision in Section 22 that administrative decisions 'shall be subject to direct review by the courts as provided by law' refers to the method of review to be provided (certiorari, appeal, etc.) and not to the scope of the review 'in cases in which a hearing is required by law.'

For the latter, this stated minimum standard ('supported by competent and substantial evidence upon the whole record') is mandatory and requires no legislation to put it into effect." Thus it was left to the Legislature to provide the method of review, but the scope of review was provided by the Constitution for all cases in which a hearing in the agency was required by law before it made its decision, which are those classified as contested cases by the Administrative Procedure Act. The Legislature has now provided an adequate method of judicial review in all cases, namely: review under Secs. 536.100 and 536.140 for cases which must be contested in a hearing in the agency before a decision is made; and review under Sec. 536.105 for cases decided by the agency without a hearing. In both classes of cases "legal rights, duties or privileges of specific parties" may be involved, and due process requires a hearing "at some stage before the proceedings become final" (Henry v. Manzella, 356 Mo. 305, 201 S.W.2d 457, 460, and cases cited). However, it is not true as plaintiffs contend "that in any case where individual rights are involved there must be an *administrative* hearing with all the attributes of due process of law." Due process is satisfied if there be either an administrative hearing subject to judicial review or the right to have a hearing in a court which may adequately review the administrative decision. The judicial review under Sec. 536.105 is broader in scope than that required by the constitutional provision (Sec. 22, art. V) for cases in which a hearing is required by law in the agency, being in effect a hearing de novo. This is authorized by the first part of Sec. 22, art. V, giving legislative authority to make administrative decisions "subject to *direct review* by the courts as provided by law;" and it adequately affords due process. Anything said to the contrary in Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626, is overruled for the reasons stated in State ex rel. St. Louis Public Service Co. v. Public Service Commission, 365 Mo. 1032, 291 S.W.2d 95, 102.

The trouble with plaintiffs' contention (as to their right to invoke the review procedure of Secs. 536.100 and 536.110) is that they can point to no law requiring a hearing on their claim before the Superintendent such as is required to make it *a contested case before him* within the meaning of the Act. There are provisions of the Insurance Code which do require such hearings. Sec. 375.020 requires a hearing on revocation of agents' licenses; Sec. 375.060 authorizes hearings to determine the condition of any company, and Sec. 375.070 requires a hearing before filing a report of examination; Sec. 375.890 requires a hearing before revocation or suspension of a certificate of authority; Sec. 378.470 requires a hearing before revocation of the license of a fraternal benefit society; Sec. 379.505 provides for a right to a hearing on rate orders made without a hearing; and Sec. 381.170 requires a hearing before an order of suspension of license under the Title Insurance Law. Thus the Legislature did provide for hearings where it deemed hearings should be required before action by the Superintendent. There would seem to be reasons for not requiring hearings by the Superintendent on claims which would come within the classification of "expenses of proceedings against insurance companies, and examinations of the assets or liabilities and valuations of policies of insurance companies" (Sec. 374.220) or of "expenses of this division". Sec. 374.260. Such claims would be not only for attorneys' fees but also stenographers' fees, examiners' fees and expenses, stationery, printing, equipment, furniture and supplies of all kinds. The main difference, between such claims in the division of insurance and claims for expenses of many other divisions of the state government, is that the amounts required to pay them may be assessed against insurance companies instead of coming from funds raised by general taxation, as would be true of many state agencies; and as "expenses of proceedings" could be ordered to be paid direct to the person rendering

the service (Sec. 374.220) or to be paid into the state treasury as assessments under Sec. 374.260, and then appropriated. See Sec. 374.160. No requirements for hearings in divisions or departments on claims for such expenses is provided anywhere in the state government that we know of, no doubt because the money to pay them must be appropriated by the Legislature (even if they are derived from fees or assessments, Sec. 36, art. III, Const.), and because the state cannot be sued on them without its consent. (Sec. 28, art. IV, of the Constitution says, "nor shall any obligation for the payment of money be incurred unless the comptroller certifies it for payment and the state auditor certifies that the expenditure is within the purpose of the appropriation, * * *;" and by Sec. 33.140 for comptroller's authority to require hearing.) "The state can adopt whatever mode or method it elects to determine whether it shall become liable and discharge a given obligation." 81 C.J.S. States § 198 p. 1264, see also 49 Am.Jur. 278, Sec. 65, p. 285, Sec. 74; as to judicial control and review see 81 C.J.S. States § 209 p. 1296. Plaintiffs' claims, at least at this stage, are claims against the state, their lawful employment having been by the state (see Sec. 5678, R.S.1929, now 374.120), and plaintiffs recognize the authority and discretion of the Superintendent to assess the companies under either Sec. 374.220 or 374.260. There is not now a claim of any kind against the companies because no assessment has been made.

Plaintiffs rely on State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W.2d 68, 71, for their contention that a hearing is required on their claim by the Superintendent. That decision held that Sec. 9469, R.S.1939, "imposes the duty on the board to hold hearings and to receive evidence and proof," on claims for accidental death benefits from the St. Louis Police Retirement System. That ruling was based on the language of the statute under which the board of trustees had the duty to decide "upon the receipt of evidence and proof" whether the death of a policeman, under the System, "was the result of an accident in the performance of duty and not caused by negligence" on his part. On a claim made by the widow of a policeman as his beneficiary a hearing was had, in which witnesses appeared and the testimony was transcribed, and we held the beneficiary's right of review was under the Administrative Procedure Act. We think that decision was correct and that it was a reasonable construction of the provisions of the statute involved to hold that it did require that board to determine such a claim after hearing. No similar language in the Insurance Code is pointed out by plaintiffs as applicable to their claim and we find none.

■ Plaintiffs also rely on what was said in the Barker case (295 S.W.2d loc. cit. 840) denying their right to maintain a suit against the Superintendent in quantum meruit, in which we pointed out we had uniformly held that the Insurance Code indicated "an intention to regulate the business from beginning to end"; and that "the superintendent of insurance is the administrative officer in charge of that interest, and courts are without authority to interfere with his administration of the Code." We then said: "We believe it is the intent of the insurance code to vest the superintendent with primary jurisdiction to approve the usual expenses and to assess the expenses of proceedings against companies. We believe this right of primary decision by the superintendent is exclusive, subject only to review by the courts in the manner provided in the insurance code or as otherwise provided by Chapter 536, RSMo 1949, V.A.M.S., and more particularly § 536.100 dealing with judicial review of administrative decisions." However, the question of which review statute (536.100 or 536.105) was applicable to claims for such expenses was not an issue in that case and so was not decided therein. Since either statute provides adequate review to satisfy due

process, what we said concerning plaintiffs' constitutional contentions therein was correct. Our conclusion must be that the review provisions and procedure of Secs. 536.100, 536.110 and 536.140 are not applicable and that the Circuit Court of Jackson County has no jurisdiction in this matter.

Our preliminary rule in prohibition is made absolute.

STORCKMAN, J., dissents in separate opinion filed.

HOLLINGSWORTH, C. J., dissents and concurs in dissenting opinion of STORCKMAN, J.

WESTHUES, LEEDY and DALTON, JJ., concur.

EAGER, J., not voting.

STORCKMAN, Judge (dissenting).

I readily agree that our decision in Barker v. Leggett, Mo.Sup., 295 S.W.2d 836, 840 [4], does not determine if this is a "contested case." The particular section of Chapter 536, applicable in this situation, was not involved and the reference to § 536.100 should be disregarded as obiter dictum.

The question involved is a difficult one, but I am persuaded, in these circumstances, that the case should be reviewed as a "contested" one and desire to state briefly the basis of my dissent.

After the decision in Barker v. Leggett, supra, the plaintiffs filed with the superintendent a lengthy written application stating the basis of their claim and its history. The prayer of their petition, in substance, was that the superintendent accept jurisdiction and hear evidence and determine the claim for fees and determine whether the claim "(1) should be allowed as expenses of 'proceedings'

against insurance companies involved in the restitution proceedings, and assessed against them ratably; or (2) are usual expenses of the Division (formerly Department) of Insurance payable out of amounts appropriated by law from the Insurance Division fund on warrants issued on such fund on vouchers approved by the Superintendent and Comptroller." There was also a general prayer for relief.

Thereafter the superintendent requested the official opinion of the Attorney General "as to my jurisdiction in this matter to try and determine the application now pending before me" and on April 17, 1957, the superintendent was advised by the Attorney General as follows:

"Therefore, we conclude that, under the provisions of Section 374.220, RSMo 1949, you do have jurisdiction to consider and determine the application now before you. As we have pointed out above, there is no statutory requirement that a hearing for such purpose be held. We think it obvious that the Superintendent is not required to hold a hearing on every claim or question that may be presented to him for determination. However, the circumstances of the present application may be such that denial of a hearing would be considered by a reviewing court to be an arbitrary and unreasonable act. Determination of the procedure is, we feel, primarily a matter within your discretion."

On July 26, 1957, the superintendent wrote a letter to the insurance companies involved in the "proceedings" advising them of the pendency of the claim and among other things stating: "It is my thought that you and the other companies who might be liable for any amount allowed these Attorneys, if an amount is allowed them and if said allowance is determined by me to be properly assessible against the insurance companies, might want to give the matter of this present claim consideration before it is acted upon either by trying to effect a compromise with the claimants or otherwise, and it is

for this reason that I am notifying you of the pendency and nature of the claim."

The superintendent, the Relator herein, alleges in his petition for prohibition filed in this court that he received a reply from the insurance companies "stating that in their opinion, and for reasons also here immaterial, Relator was without authority to make an allowance to claimants."

On February 7, 1958, the superintendent wrote the plaintiffs a letter in which he acknowledged their letter of January 29, 1958, requesting a hearing, and in which he further stated:

"After a careful review of all the matters which have been submitted to me in connection with the above mentioned claims, I have concluded that I am not required by law to grant a hearing upon the applications before making a decision upon them.

"Even though I am not required by law to grant applicants a hearing upon their claims before deciding them, I assume that I could grant such a hearing if I thought the same would enable me better to rule upon the claims. However, it is my view that even though I should hold a hearing on these claims and should conclude after such hearing that applicants had been lawfully employed as claimed in the applications, and had rendered valuable services pursuant to said employment, the value of the services of claimants could not be allowed as expenses of the insurance department which could be paid out of current appropriations, as provided by Section 374.160, RSMo 1949, nor could the value of said services be assessed against insurance companies as expenses of proceedings against such insurance companies, as contemplated by Sections 374.160 and 374.220 RSMo 1949.

"In view of the above, I am respectfully denying your application for a hearing upon these claims, and must deny the claims."

Thereafter the plaintiffs filed in the Circuit Court of Jackson County their petition for review of the action of the superintendent which gives rise to the present petition for prohibition.

Section 536.010 as amended Laws of Missouri 1957, p. 748, § 1 provides: " 'Contested case' means a proceeding before an agency in which *legal rights*, duties *or privileges of specific parties are required by law to be determined after hearing.*" (Emphasis supplied unless otherwise noted.) In this case provisions of the Insurance Code largely determine whether the legal rights and privileges of specific parties are "required by law to be determined" and, if so, whether such determination is required to be made *"after hearing."*

In addition to other matters specifically mentioned, it is the duty of the superintendent of the Insurance Division "generally to do and perform with justice and impartiality all such duties as are or may be imposed upon him by the laws regulating the business of insurance in this state." § 374.040. Among his duties under the Code is the authority to employ counsel "for the purpose of enforcing the insurance laws." § 374.120.

All expenses of the Division except, inter alia, expenses of "proceedings against any company * * * which expenses are to be paid by the company, or as provided by the law" shall be paid monthly out of the general funds of the Insurance Division. § 374.160.

The manner in which expenses of proceedings against insurance companies (374.160) are to be paid is made clear in subparagraph 1 of § 374.220 which provides that such expenses "* * * *shall be assessed by the superintendent upon the company proceeded against * * * and shall be in the first instance paid by such company, on the order of the superintendent directly to the person or persons rendering the service."*

"1. The superintendent may bring suit to recover any fees or other sums which he is authorized by law to demand or collect.

"2. Any company or person liable for any fees or assessments who shall neglect or refuse to pay the same within ten days after written demand by the superintendent, shall be liable to pay double the amount of such fees or assessments; and any judgment recovered in such case shall be for double such amount and costs." § 374.240.

The state cannot "be responsible in any manner" for any expenses of the Division or "any charges connected therewith." This is expressly guarded against in § 374.160. Expenses of examinations, proceedings against companies, dissolution proceedings and certain other items are chargeable directly to the companies involved or their assets in the event of liquidation. §§ 374.160 and 374.220. General expenses of the Division are payable out of the general funds and in the event of a deficiency, the amount thereof is assessable against all insurance companies doing business in the state in proportion to the relative amounts of the assets of each company. § 374.260. Therefore, I cannot agree with the statement in the majority opinion that: "Plaintiffs' claims, at least at this stage, are claims against the state, their lawful employment having been by the state * * *." The plaintiffs, of course, are bound by the statutory provisions for their compensation; it was a part of their contract of employment, "including the method of payment." State ex rel. Lucas v. Blair, 346 Mo. 1017, 144 S.W.2d 106, 109 [5]. The claimants cannot go directly against the companies thought to be liable, but must proceed in the manner provided by the Insurance Code. Apparently, under the statutory plan, if the superintendent lawfully declines to approve and assess fees such as these, the claimants have no further remedy. On the other hand, it would appear that if claims for fees are approved and assessed, the companies against which the assessment is made may refuse payment and make their defenses in the action which the superintendent is authorized to bring to enforce collection. § 374.240.

This court has stated with meticulous care at every opportunity presented that the Insurance Code indicates an intention "to regulate the business from beginning to end," and that: "The superintendent of insurance is the administrative officer in charge of that interest, and courts are without authority to interfere with his administration of the Code." See State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S.W.2d 174, 177, and the approval of the statement in Barker v. Leggett, Mo.Sup., 295 S.W.2d 836, 840.

As we have held the courts cannot invade the province of the superintendent of the Insurance Division, so we should hold that the superintendent cannot abdicate his functions in favor of the courts. There should be no doubt about the superintendent's authority or jurisdiction in this matter. This is made clear by the Code and by our holding in the case of Barker v. Leggett, Mo.Sup., 295 S.W.2d 840, in which we stated: "We believe it is the intent of the insurance code to vest the superintendent with primary jurisdiction to *approve* the usual expenses and to *assess* the expenses of proceedings against companies. We believe this right of primary decision by the superintendent is exclusive, subject only to review by the courts * * *."

It seems to me in these circumstances the superintendent is acting in a quasi-judicial capacity in deciding whether or not to approve the claims for assessment against the insurance companies. State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W.2d 68, 70 [2], 72 [5]. There can hardly be any questions that private rights are affected.

I believe it is the intent of the Insurance Code that the superintendent shall make the initial decision on the merits of a claim such as this. It seems to me that a reviewing court could not initially perform this function even after taking evidence.

If we are correct in saying that the primary decision is exclusively for the superintendent, as we did in Barker v. Leggett, supra, then it would seem he should conduct a hearing. The inquiry "which hears before it condemns" (State ex rel. Hurwitz v. North, 304 Mo. 607, 264 S.W. 678, 681), should be conducted by the superintendent under the circumstances of this case. I believe this is the legislative intent and accords with our settled construction of the Insurance Code.

The proceedings in this case were initiated by the filing of a written application seeking to invoke the relief provided by the statutes and a hearing was requested. In a case where the basic facts occurred before the term of the present superintendent, it seems especially necessary that the plaintiffs be granted an opportunity to be heard, not only to permit them to support their claim with proof, but also to afford plaintiffs an opportunity to rebut evidence or information tending to defeat the claim for compensation.

Believing that the Insurance Code and our decisions construing it contemplate and require a hearing before the superintendent in this situation, I would quash our preliminary rule as having been improvidently granted.

On Motion for Rehearing or for Modification.

PER CURIAM.

Respondent has filed a motion for rehearing or for modification of the opinion herein. However, it is not contended that the opinion is wrong in holding that review must be under Sec. 536.105. (Statutory references are to RSMo and V.A.M.S.)

Therefore, there is no occasion for a rehearing; but we will consider respondent's contentions concerning modification.

■ The first is to modify the statement that after our decisions in the Barker and Jacobs cases (295 S.W.2d 825 and 295 S.W.2d 836) "plaintiffs filed a claim for their fees with the superintendent, etc." It is urged that this should be modified to state that in 1936 and repeatedly and continuously thereafter plaintiffs made claims for their fees and to show in detail what requests they made for action by the superintendent. While these facts may be material on review of the superintendent's denial of plaintiffs' claims, and may be shown by evidence in such a proceeding, they are wholly immaterial to the issue of respondent's jurisdiction in this case and this request for modification is denied.

The second request for modification concerns the statements that "undoubtedly, it is intended that the Superintendent shall have discretion as to the use of these authorized methods, which plaintiffs apparently recognized by asking him to do one or the other"; and that "plaintiffs recognize the authority and discretion of the Superintendent to assess the companies under either Sec. 374.220 or 374.260." Plaintiffs say they claim that the superintendent has no discretion to apply either Sec. 374.220 or Sec. 374.260 but that "the superintendent and the reviewing courts would have to find the facts about the services rendered by claimants and determine as a matter of law whether the expenses thereof were 'proceedings against insurance companies' or paid as usual expenses of the department chargeable to all companies doing business in the State." Plaintiffs say that is what paragraph (d) of their requests (set out in our opinion) means. Apparently, we should have said that plaintiffs recognize the authority of the superintendent to make a decision as to which statutory method to apply in payment of claims and not imply that plaintiffs recognize he had discretion to apply either statutory method regardless of the facts;

and the opinion is to that extent modified. However, we have not decided and do not decide anything on the merits of plaintiffs' claims or the method by which they may be paid. Neither have we decided nor do we decide the matter of discretion of the superintendent as to the use of either method for payment of claims (374.220 or 374.-260) and all parties are free to make any contentions they desire as to any of these matters before the proper reviewing court.

■ The third and last request for modification is to eliminate the statement that "plaintiffs' claims, at least at this stage, are claims against the state." They say: "Plaintiffs claims are against either the insurance companies proceeded against and found guilty of violating the 10% rate reduction order of Superintendent Hyde; or all of the insurance companies, depending on whether such expense is found to be expenses of proceedings against companies or expenses of the Division of Insurance. It is a derivative claim in which the Superintendent acts quasi judicially as the determining and assessing officer, subject to judicial review under Sec. 536.105." Plaintiffs cite State of Missouri v. Homesteaders Life Ass'n, 8 Cir., 90 F.2d 543, 548, which held that the superintendent of insurance was "an entity distinct from the state with power to sue and be sued"; and therefore a suit by the superintendent was not a suit by the state. (Sec. 3, art. V, Const. also recognizes the difference between a suit by the state and a suit by a state officer.)

What we meant was (as we think the context shows) that plaintiffs' claims are against the state, in the sense that they are at least claims against a state agency authorized by the state to employ them, even though the legislature has provided a method by which the money to pay them (and other claims for operation of the division of insurance) can be collected from sources other than general taxation. If either of the methods, which plaintiffs say might be proper, should be adopted, it seems that the insurance code has provided for state action (through the superintendent, Sec. 374.240 or the collector of revenue, Sec. 374.220, subd. 2), and not action by claimants, to enforce payment of the necessary funds by those against whom any assessment is made. We have even suggested in Aetna Insurance Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, 1168, that a third method of payment of plaintiffs' claims would be proper, namely: "by an appropriation by the legislature", saying therein "respondents (plaintiffs) must look to the legislature for the payment of their fees." It is shown in the record herein that plaintiffs have sought to collect fees by this method. Surely it would not be proper for the legislature to appropriate money to pay claims which had no basis as claims properly authorized for state governmental purposes. (See Sec. 38 [a], art. III, Const., prohibiting grant of public money to private persons; and Sec. 39 [4], art. III, prohibiting payment of any claim "under any agreement or contract made without express authority of law.") Plaintiffs' claim is based on a contract authorized by Sec. 374.120 to be made by the superintendent with the approval of the Governor, under which we held in the Aetna case, supra (124 S.W.2d, loc. cit. 1167) "that the superintendent did have a right to employ respondents (plaintiffs) in the restitution proceedings"; also pointing out that "before a state officer can enter into a valid contract he must be given that power either by the Constitution or by the statutes"; and that "such power must be exercised in manner and form as directed by the Legislature." However, our criticized statement was made arguendo as a matter of illustration, and we are willing to leave its final authoritative determination to the reviewing court where it can be more fully briefed and presented.

Respondent's motion is overruled and our opinion modified on the court's own motion to the extent herein indicated.